IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MARINA VIEW CONDOMINIUM ASSOCIATION OF UNIT OWNERS, | § § § § | No. 169, 2020 |
| | § | Court Below: Court of Chancery |
| Plaintiff Below, Appellant, | § § | of the State of Delaware |
| | § | C.A. No. 2017-0217-PWG |
| v. | § § | |
| REHOBOTH MARINA VENTURES, LLC, | § § § | |
| | § | |
| Defendant Below, Appellee. | § | |

Submitted: November 4, 2020
Decided: December 31, 2020

Before **VAUGHN**, **TRAYNOR** and **MONTGOMERY-REEVES**, Justices.

**O R D E R**

On this 31st day of December 2020, upon consideration of the parties' briefs and the record on appeal, it appears that:

(1)     The appellant, Marina View Condominium Association of Unit Owners (the "Association"), appeals from a Court of Chancery order denying its claim for attorneys' fees.   The Association brought this action in the Court of Chancery against Rehoboth Marina Ventures, LLC ("Marina"), claiming that Marina had breached a lease agreement between the two parties.   Both parties filed motions for summary judgment, each of which was granted in part and denied in part.   The Association then sought attorneys' fees under a fee-shifting provision contained in

the lease. The fee shifting provision provided that the Association was entitled to recover attorney's fees if the lessee, Marina, breached the lease and such breach remained uncured for a period of fifteen days after Marina received notice from the Association specifying such breach. The Court of Chancery found that Marina had not breached the lease and that the Association was therefore not entitled to attorneys' fees. On appeal, the Association claims that the evidence established that Marina committed an anticipatory breach of the lease entitling the Association to attorneys' fees, and the Court of Chancery's denial of its request for fees was error. We find no error in the Court of Chancery's ruling and affirm.

(2) On July 25, 2006, Marina Motel Ventures, LLC, a non-party to this litigation, entered into the lease with Marina. Later, the Association succeeded to Marina Motel Ventures' interest as lessor. Marina operates a marina business on the leased premises. The leased premises includes a marina building, adjacent parking, and other designated "marina areas."

(3) Section 5(a) of the lease provides that the property shall be used for the purpose of conducting a marina, "and no part of the Leased Property shall be used for any other purposes without the prior written consent of Lessor." Section 7 of the Lease provides that Marina "may make changes, modifications, alterations, additions and replacements to any improvements located in the Marina Area, or add new improvements within the Marina Area, all as may be necessary or desirable in

2

the conduct of the [marina], and as permitted by the Town of Dewey Beach and without the consent of the Lessor." Section 20(b) provides the remedy for non-monetary default or breach and gives the lessee the above-mentioned fifteen days after written notice of a breach from lessor to cure said breach. If the lessee fails to do so, "Lessor may bring an action to compel Lessee's performance, and shall be entitled to recover its costs of litigation, including reasonable attorneys' fees, as determined by the Court." Under section 19, a breach is the "[f]ailure to do, observe, keep and perform any of the other terms, covenants, conditions, agreements and provisions of this Lease required on the part of Lessee."

(4) At or around the time of the lease's execution, Marina provided its services to its customers out of an improvised structure of two mobile homes in an L-shape. In March of 2006, plans were approved by the Town of Dewey Beach for a one-story marina building. Elements of the plans reflected an intention to build future second and third floors. During or about December of 2016, the Association became aware that Marina was constructing two apartments on the second and third floors of its new marina building. On January 30, 2017, the Association made a formal objection to Marina, contending that the construction of residential apartments was in violation of section 5(a) of the lease. Marina continued with its construction.

3

(5) On March 22, 2017, the Association filed a complaint against Marina in the Court of Chancery. Count I asserted that construction of the apartments was a violation of the lease. It sought a permanent injunction forbidding construction, leasing, sale, or other activities related to the apartments. Counts II and III sought rescission of the lease. Marina filed a motion to dismiss which was granted as to counts II and III. The parties filed cross-motions for summary judgment as to Count I.

(6) On August 12, 2019, a Master of the Court of Chancery issued a final report (the "Merits Report"), which found that Marina "has not violated the Lease *per se* by constructing and maintaining apartments but those apartments must be used for purposes consistent with the Lease . . . which includes use by Marina's on-site property manager," but not for "customers, guests, or owners not acting as the on-site property manager." The Master recommended granting the Association's motion in part by enjoining Marina from using the apartments as residential units inconsistent with the Lease. The Master also recommended that "Marina is entitled to summary judgment allowing the construction and maintenance of apartments so long as [they] are used consistent with the purpose contained in the Lease." No exceptions to the Merits Report were filed, and the Court of Chancery approved and adopted the same. The Merits Report stated that the Association's request for attorneys' fees and costs would be addressed following supplemental submissions.

(7)    In its supplemental submission, the Association argued that because it prevailed in its motion to enforce its rights and Marina's obligations under the lease, it was entitled to attorneys' fees pursuant to section 20(b).    On December 2, 2019, the Master issued a final report recommending denial of the Association's request for attorneys' fees (the "Fee Report").    The Master found that, among other things, section 20(b) requires "a breach of any term, covenant, condition, agreement or provision of the Lease by Marina."    The Master concluded that in the Merits Report "[t]here was no finding that Marina's construction of the apartments was a breach of the Lease, nor any conclusion that Marina had violated the Lease by using the apartments for purposes inconsistent with the conduct of a marina."    The Association took exceptions to the Fee Report, arguing that Marina's construction of the apartments with stated intentions of using them impermissibly "is a present breach accompanied by an anticipatory repudiation, constituting a total breach."

(8)    On April 16, 2020, the Court of Chancery issued a letter opinion overruling the Association's exceptions to the Fee Report.    The court concluded that the Association did not make an anticipatory repudiation argument in the summary judgment proceedings before the Master, thereby waiving it. Additionally, the court stated that even if there was no waiver during those proceedings, the Association waived the issue when it failed to take exceptions to the Merits Report.

5

(9) The Association argues on appeal that it is entitled to recover fees under section 20(b) of the Lease because its breach of contract claim led to a favorable finding on summary judgment and injunctive relief, and the Association provided Marina the requisite notice and opportunity to cure. Additionally, the Association argues that the sought-after fees are reasonable. Regarding breach, the Association argues that (1) breach was found in the Merits Report, (2) there was a breach by anticipatory repudiation, and (3) the Association did not waive its anticipatory repudiation theory, as it was already recognized by the Master in the Merits Report.

(10) "Under the American Rule and Delaware law, litigants are normally responsible for paying their own litigation costs. An exception to this rule is found in contract litigation that involves a fee shifting provision. In these cases, a trial judge may award the prevailing party all of the costs it incurred during litigation."[1] This Court reviews the Court of Chancery's interpretation of a contractual fee-shifting provision *de novo*, but reviews its decision to deny awarding attorneys' fees and costs for an abuse of discretion.[2] "When an act of judicial discretion is under review, the reviewing court may not substitute its own notions of what is right for

---

[1] *Sternberg v. Nanticoke Mem'l Hosp., Inc.*, 62 A.3d 1212, 1220 (Del. 2013) (en banc).
[2] *SIGA Techs., Inc. v. PharmAthene, Inc.*, 67 A.3d 330, 341 (Del. 2013) (en banc) (citing *Scion Breckenridge Managing Member, LLC v. ASB Allegiance Real Estate Fund*, 68 A.3d 665, 675-77 (Del. 2013) (en banc)).

those of the trial judge, if his judgment was based upon conscience and reason, as opposed to capriciousness or arbitrariness."[3]

     (11)   The Lease's fee-shifting provision, section 20(b), provides:

> If [Marina] breaches any other term, covenant, condition, agreement or other provision of this Lease or otherwise defaults according to the terms stated in paragraph (19) above, and [Marina] further fails to cure said breach within fifteen (15) days after written notice to [Marina] from [Association] specifying said breach, [Association] may bring an action to compel [Marina's] performance, and shall be entitled to recover its costs of litigation, including reasonable attorneys' fees, as determined by the Court.

Accordingly, the first prerequisite to fee-shifting is that the Marina must have breached the lease.

     (12)   The Court of Chancery's decision denying the award of attorneys' fees was not an abuse of discretion, as it was based on the findings in the Merits Report, from which neither party took exceptions. The Merits Report specifically found that the Marina "did not violate the Lease *per se*," and also denied the Association's request to tear down and remove the apartments. In fact, Marina was permitted to construct the apartments so long as they were used in keeping with the lease. Therefore, it cannot successfully be argued that Marina breached the lease as the Association claims.

---

[3] *Mahani v. Edix Media Grp., Inc.*, 935 A.2d 242, 245 (Del. 2007) (quoting *Dover Historical Soc. v. City of Dover Planning Comm'n*, 902 A.2d 1084, 1089 (Del. 2006)).

(13)   In its exceptions to the Fee Report, the Association also argued that by declaring its intent to use the apartments for purposes not permitted under the lease, Marina breached the lease by anticipatory repudiation.   The Association relies on *Skyways Motor Lodge Corp. v. Delaware River and Bay Authority*.[4]   However, *Skyways* does not apply here for two reasons.   First, the *Skyways* court was determining whether the plaintiff's anticipatory repudiation claim could survive a 12(b)(6) motion to dismiss and was not considering Skyway's claim on the merits. Second, the plaintiff in *Skyways* actually asserted anticipatory repudiation in its complaint.   Here, the Association did not claim anticipatory repudiation until its exceptions to the Fee Report.   By not asserting anticipatory repudiation prior to filing its exceptions to the Fee Report, the Association effectively waived this claim.[5] Contrary to the Association's assertion on appeal, the Merits Report did not find any breach by anticipatory repudiation.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Court of Chancery is **AFFIRMED.**

BY THE COURT:

/s/   James T. Vaughn, Jr.
Justice

---

[4] 2019 WL 2364320 (Del. Ch. May 31, 2019).
[5] *Emerald P'rs v. Berlin*, 726 A.2d 1215, 1224 (Del. 1999) (citing *Murphy v. State*, 632 A.2d 1150, 1152 (Del. 1993)) ("Issued not briefed are deemed waived.").